**CASE NO. 22-30038**

---

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

**ESTHER WATSON,**
                                        **Plaintiff-Appellant**

**VERSUS**

**SCHOOL BOARD OF FRANKLIN PARISH; EDDIE RAY BRYAN; RONNIE HATTON; DANNY DAVIS; RICHARD KELLY; LOUISE JOHNSON; TIM EUBANKS; DOROTHY BROWN; LANNY JOHNSON**
                                        **Defendants-Appellees**

---

Appeal from the United States District Court
Western District of Louisiana, Monroe Division

**ORIGINAL BRIEF ON BEHALF OF PLAINTIFF-APPELLANT**

---

MALCOLM X. LARVADAIN
626 Eighth Street
Alexandria, Louisiana 71301
(318) 445-3533
ATTORNEY FOR PLAINTIFF-APPELLANT

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons

have an interest in the outcome of this case.  These representations are made in

order that the judge of this Court may evaluate possible disqualification or recusal.

1. Esther Watson
   Plaintiff-Appellant

2. Malcolm X. Larvadain
   626 Eighth Street
   Alexandria, Louisiana 71301
   Attorney for Esther Watson

3. School Board of Franklin
   Parish Defendant-Appellee

4. Melissa S. Losch
   2431 S. Acadian Thruway, Suite 600
   Baton Rouge, Louisiana 70808
   Attorney for School Board of Franklin
   Parish

<u>s/Malcolm X. Larvadain</u>
Malcolm X. Larvadain

## STATEMENT REGARDING ORAL ARGUMENT

Racial discrimination is an unfortunate aspect of life in the workplace. Laws have been enacted to protect those most affected by it. Appellant was qualified for position; even more qualified than the selectee. The alleged legitimate, nondiscriminatory reasons are twofold: (1) appellee feared appellant would not stay in the position given her lengthy employment history; and (2) appellant did not live in Franklin Parish. Appellant contends the legitimate, nondiscriminatory reasons are not plausible and factually supported under the circumstances. Given the far-reaching implications, appellant requests oral argument.

# <u>TABLE OF CONTENTS</u>

Certificate of Interested Persons                                    2

Statement Regarding Oral Argument                         3

Table of Contents                                                       4

Table of Authorities                                                  5

Statement of Jurisdiction                                          7

Statement of Issue Presented for Review                 7

Statement of the Case                                              7

Summary of Argument                                            8

Standard of Review                                                 8

Summary Judgment Standard                                 8

Argument

    Failure to Promote Burden of Proof                          10

    Retiree returned to work not legitimate Nondiscriminatory reason        12

    Non-resident as legitimate nondiscriminatory reason        17

    Appellant more qualified than the selectee                    26

Conclusion                                                              29

Relief Requested                                                      29

Certificate of Service                                               30

Certificate of Compliance with Rule 32(a)               30

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. at 255, 106 S. Ct. 2505                     10, 22, 29

*Boudreaux v. Swift Transp. Co.*
    402 F.3d 536, 540 (5th Cir. 2005)                  9

*Burrell v. Dr. Pepper/ Seven Up Bottling Group*
    482 F.3d 408 (5th Cir. 2007)                    26

*Gen. Universal Sys., Inc. v. Lee*
    379 F.3d 131, 141 (5th Cir. 2004)                  9

*Grimes v. Texas Dept. Of Mental Health and Mental Retardation*
    102 F.3d 137, 140 (5th Cir. 1996)                  10

*Gross v. FBL Financial Services, Inc.*,
    557 U.S. 167, 129 S. Ct. 2343 (2009)               16

*Haley v. Hosp. Serv. Dist. Of W. Feliciana Parish*
    321 F. Supp. 3d 670, 675 (M.D. La. 2018)            11

*Jefferies v. Harris County Community Action Ass'n*
    693 F. 2d 589, 590 (5th Cir. 1982)                12

*LaPierre v. Benson Nissan, Inc.*
    86 F. 3d 444, 447 (5th Cir. 1996)                 10

*Matsushita Elec. Induis., Co., Ltd. V. Zenith Radio Corp.*
    475 U.S 574, 586,106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)     10

*McDonnell Douglas Corp. v. Green*
    411 U.S 802,93 S. Ct. 1817                       11, 12

*Norman v. Apache Corp.*
    19 F. 3d 1017, 1023 (5th Cir. 1994)               9

*Patrick v. Ridge*
    394 F. 3d 311 (5th Cir. 2010)                     8, 9, 12, 25

*Quality Infusion Care Inc. v. Health Care Serv. Corp.*
    628 F. 3d 725, 728 (5th Cir. 2010)                  9

*Ramsey v. Henderson*
    286 F. 3d 264, 269 (5th Cir. 2002)                  9

*Reeves v. Sanderson Plumbing Products*
    286 F. 3d 264, 269 (5th Cir. 2002)                 12

*St. Mary's Honor Ctr. V. Hicks*
    509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed..2d 407 (1993)    12

**STATUTES**

28 U.S.C. §1291                                                7

**FEDERAL RULES**

Federal Rule of Civil Procedure 56                       8, 9

## STATEMENT OF JURISDICTION

Appellant appeals from the Final Judgment entered into this action on January 10, 2022 granting appellee's Motion for Summary Judgment (ROA.809). Appellant timely filed a Notice of Appeal (ROA.810) on January 21, 2022.  This Court has jurisdiction over the appeal under 28 U.S.C. §1291.

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

1)  Whether defendant has legitimate, nondiscriminatory reasons for not selecting plaintiff.

## STATEMENT OF THE CASE

Appellant instituted the above lawsuit alleging racial discrimination because she was not chosen as principal of Winnsboro Elementary School. (ROA.12) After extensive discovery, appellee filed a Motion for Summary Judgment contending that even though appellant can present a prima facie case, it had two (2) legitimate, nondiscriminatory reasons for not selecting appellant. (R0A.60) Appellant contends the first of the purported legitimate, nondiscriminatory reasons is false and age discrimination.  (ROA.286) The second purported legitimate, nondiscriminatory reason is false, illogical and not even a factor to be considered in the hiring process.  Additionally, appellant advances that she was "clearly better qualified" for the position. (ROA.297)

The trial court ruled in favor of appellee asserting it had legitimate, nondiscriminatory reasons for not selecting appellant. (ROA.797) Appellant timely perfected an appeal. (ROA.810)

## SUMMARY OF ARGUMENT

Appellee acknowledges that appellant has established a prima facie case and even scored higher than the selectee in the interview process. (ROA.173, 177) The analysis turns to whether appellee has legitimate, nondiscriminatory reasons for not selecting appellant. According to appellee, appellant was not selected because she was a retiree-returned-to-work and did not live in Franklin Parish. (ROA.311-312) Appellant, on the other hand, contends using her retiree-returned-to-work status is age discrimination and age discrimination can never be a legitimate, nondiscriminatory reason. Additionally, appellant had the position of assistant principal for eight (8) years prior to applying for the principal position and living outside of Franklin Parish was never an issue. Lastly, appellant was more qualified than the selectee.

**Standard of Review**

A grant of summary judgment is reviewed *de novo*, applying the same standard as the district court. ***Patrick v. Ridge***, 394 F.3d 311 (5th Cir. 2004)

**Summary Judgment Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." ***Quality Infusion Care Inc. v. Health Care Serv. Corp.***, 628 F.3d 725, 728 (5th Cir.2010).  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. ***Patrick v. Ridge***, 394 F.3d 311, 315 (5th Cir.2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." ***Gen. Universal Sys., Inc. v. Lee***, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. ***Boudreaux v. Swift Transp. Co.***, 402 F.3d 536, 540 (5th Cir.2005).  The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. ***Ramsey v. Henderson***, 286 F.3d 264, 269 (5th Cir.2002).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. ***Norman v. Apache Corp.***, 19 F.3d 1017, 1023 (5th Cir.1994).  The nonmoving party must show more than "some metaphysical doubt as to the

material facts." ***Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.***, <u>475 U.S.</u> <u>574, 586</u>, <u>106 S.Ct. 1348</u>, <u>89 L.Ed.2d 538</u> (1986).  In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. ***Anderson v. Liberty Lobby,*** ***Inc.***, <u>477 U.S. 242, 255</u>.  "In an employment discrimination case, the focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff." ***LaPierre v. Benson Nissan, Inc.***, <u>86 F.3d 444,</u> <u>447</u> (5th Cir.1996).  Furthermore, unsubstantiated assertions, conclusory allegations, and speculation are insufficient to satisfy the plaintiff's burden. Rather, "it is incumbent upon the nonmoving party to present evidence — not just conjecture and speculation — that the defendant ... discriminated against plaintiff on the basis of [her] race." ***Grimes v. Texas Dept. Of Mental Health and Mental*** ***Retardation***, <u>102 F.3d 137, 140</u> (5th Cir. 1996).

## <u>ARGUMENT</u>

**Failure to Promote Burden of Proof**

In order to survive defendant's motion for summary judgment on her failure to promote claims, plaintiff must establish a prima facie case of discrimination by providing summary judgment evidence that she: "(1) is a member of a protected class; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite [her] qualifications, [she] was rejected; and (4)

that, after [her] rejection, the position remained open and the employer continued

to seek applicants from persons of plaintiff's qualifications. ***Haley v. Hosp. Serv.***

***Dist. Of W. Feliciana Parish***, 321 F. Supp.3d 670, 675 (M.D. La. 2018).  If

plaintiff meets her prima facie burden, the defendant must "produce a legitimate,

nondiscriminatory reason for the failure or refusal to promote the plaintiff." ***Id.***  If

the defendant proffers a legitimate, nondiscriminatory reason for the failure or

refusal to promote, plaintiff then "bears the ultimate burden of proving that the

defendant's proffered legitimate nondiscriminatory reason is pretext for

discrimination. ***Id.***  To carry this burden, the plaintiff must rebut each

nondiscriminatory reason articulated by the defendant. ***Id.*** at 676.

A court may "infer the ultimate fact of discrimination from the falsity of the

employer's explanation ... (particularly if disbelief is accompanied by a suspicion

of mendacity)." ***Id.***  (citation and internal punctuation omitted). Thus, plaintiff can

survive summary judgment if her prima facie case "combined with sufficient

evidence for [this Court] to find that defendant asserted justification is false." ***Id.***

  In this situation, appellee acknowledges that appellant has established a

prima facie case and even scored higher than the selectee.  (ROA.173, 177)

Accordingly, the burden shifts to appellee articulating a legitimate,

nondiscriminatory reason for appellant's non-promotion. ***McDonnell Douglas***

***Corp. v. Green***, 411 U.S. 792, 802, (1973).  Appellant's burden is one of

production, not persuasion; it "can involve no credibility assessment." ***Reeves v.***
***Sanderson Plumbing Products***, <u>530 U.S. 133, 142</u>. (2000) (quoting ***St. Mary's***
***Honor Ctr. v. Hicks***, <u>509 U.S. 502, 509</u>, <u>113 S.Ct. 2742</u>, <u>125 L.Ed.2d 407</u> (1993)).
Evidence that the selectee had a qualification that the appellant lacked can suffice
as a legitimate, nondiscriminatory reason for a failure to promote. See generally
***Jefferies v. Harris County Community Action Ass'n***, <u>693 F.2d 589, 590</u> (5th
Cir.1982)).  The holding of ***Jefferies*** makes perfect sense because a position may
require a certain skill set that only the selectee possessed.  On the other hand, in
***Patrick v. Ridge***, <u>394 F.3d 311</u> (5th Cir. 2004), this Honorable Court ruled that the
employer had not produced a legitimate, nondiscriminatory reason for non-
selection.  In the ***Patrick***, the employer asserted that the employee was "not
sufficiently suited for the position" and it hired "the best qualified candidate". ***Id.***
at 315.  However, the record did not support or explain why the employee was not
sufficiently suited for the position.  ***Id.***  In particular, this Honorable Court stated,
"to rebut an employee's prima facie case, a defendant employer must articulate in
some detail a more specific reason than its own vague and conclusory feeling about
the employee". ***Id***

**Retiree-Returned-To-Work as Legitimate Nondiscriminatory Reason**

The following excerpt taken from the oral deposition of Dr. Neal Lane
Johnson, also known as Dr. Lanny Johnson, who was the then superintendent of

the Franklin Parish school district and the decision-maker in selecting the next principal at Winnsboro Elementary School, explains the alleged legitimate, nondiscriminatory reason for appellant not being selected:

Q.    Okay.  All right.  Now, why wasn't Ms. Watson selected?

A.    Why wasn't?

Q.    Yes.

A.    Well, its—it comes down to a decision on the part of the superintendent, which I've done no telling how many on principals, and I have to make a decision based on my thoughts of the people that are applying.  Ms. Watson was a retiree returned to work.  We certainly don't use her age because she's physically inept and all that and we wouldn't do that.  She had been at the school about seven or eight years, if I remember man that has become certified, that has lived in the parish.  Ms. Watson did not live in the parish, He lived in the-in Franklin Parish and his kids went to school in Franklin Parish.  Ms. Watson did a good job as an assistant principal for us.  Mr.—who was superintendent? Won't come to me—as principal.  But in my estimation when I made the selection that he was the man that I thought was the best for the job.

Q.    Okay.  And are you saying the fact that she did not live in the parish played a role?

A.    I said that entered into it.

Q.    Okay.  What does that mean, "entered into it"?

A.    Well, I mean, in my decision.  She didn't live in the parish.

Q.    What's the significance of that?

A.    Well, I want the principal-if I can do it-I want them to be community oriented.  I want them to live in the parish and be a part of the parish in which they live.

Q.    Was living in the parish a requirement?

A.    No.  It wasn't.

Q.    So why was that used in making your decision?

A.    Well-

        MS. LOSCH: Objection, Asked and answered.

        MR. LARVADAIN: No, That-

        MS. LOSCH: But go ahead.  I'm just-for the record-making a record.

A.    Well, I mean, it's just makes sense if you have a principal I think Ms. Watson was principal in Catahoula where she lived at one time, and when she came to Franklin Mr. Lofton did a for her as assistant [principal].  I recommended her to the board and she was named assistant principal.  But I thought if its—if we had somebody in the parish that was a part of the parish community that the better than somebody living in another parish having to drive every day to Winnsboro.

14

Q.     Did anyone ever tell you, she complained that she lived in a different parish?

A.     No one ever complained.

Q.     All right.   Did anyone mention that to you?

A.     No one ever mentioned it to me.

Q.     But that's an issue that you decided to pick-

A.     That's right.

Q.     Okay.

A.     Which was my job to do.

Q.     Okay.  All right.  And you mentioned that you feared she wouldn't be there long.

A.     Well, she was a retiree-returned-to-work.  I don't know at what point she retired but it probably had to be twenty-five years.  If she had been in Franklin seven or eight years, that was thirty-three or thirty-four.  So I— Usually, educators don't stay longer than thirty or thirty-four, thirty-three, thirty-two years.  So, in my mind, I had it she wouldn't be there that long; and I had a guy that I thought that would be there that lived in the parish.  I wasn't going to be there much longer.  And so, you know, I just-I did what I thought was best and I appointed the person I thoughts was best for the job.

Q.     Okay.  Did anyone tell you she plans of retiring?

A.     Did anyone tell me that she had plans of retiring?

Q.    Yes.

A.    No.

(ROA.311-312)

Therefore, the two (2) legitimate nondiscriminatory reasons are: (1) appellee

suspected appellant would not stay in the position long since she was a retiree-

returned-to-work and (2) appellant did not live in Franklin Parish.

The first reason is extremely troubling.  The only logical reason that appellee

would be concerned about appellant not staying long is because of appellant's age.

In essence, appellee felt appellant was too old for the position in comparison to the

other applicant who was approximately 40 years old.  A five (5) minute discussion

between appellant and Dr. Neal Lane Johnson would have been sufficient.  If

appellant said something alarming, then Dr. Neal Lane Johnson could have been

justified is not choosing her but to automatically assume she would retire in the

near future without a basis for doing so smacks of falsity, is not supported by the

record and, if it is true, amounts to age discrimination under the Age

Discrimination in Employment Act of 1967.

Under ***Gross v. FBL Financial Services, Inc.***, 557 U.S. 167, 129 S. Ct.

2343 (2009), a "plaintiff asserting age discrimination must show that age was the

determinative factor behind an adverse employment action".  Based on the oral

testimony of Dr. Neal Lane Johnson, it appears age was the "determinative factor".

Accordingly, a legitimate, nondiscriminatory reason should not be another form of discrimination.

**Not Living in Franklin Parish as Legitimate Nondiscriminatory Reason**

Appellant not living in the parish as a reason to not select her for the role is also suspicious. During her eight (8) year tenure as assistant principal, living in Catahoula Parish was never a concern. Further, in Dr. Neal Lane Johnson's oral testimony, he clearly stated that living in the parish was not a requirement for the role. Even further, it would be illogical and irrational for residency within Franklin Parish to be required or desired for appellant to be principal. It cannot be overlooked that appellant interacted with hundreds, if not thousands, of children and their families during her eight (8) years as assistant principal. Appellant is an African-American woman over the age of 60 who is experienced in child rearing. (ROA.373) To many of the children at Winnsboro Elementary, she was a mother/grandmother-like figure. Winnsboro Elementary is in a poor, African-American community (ROA. 342); the school went from a "F" school to a "B" school under the leadership of appellant as the assistant principal. (ROA. 342) It takes "buy-in" from students, parents and community leaders for that type of improvement. Appellant was ingrained in the fabric of the community and any notion that a forty (40) year old Caucasian male could relate to the school, students and community better than appellant is misplaced, and quite frankly, false.

Additionally, Franklin and Catahoula are neighboring parishes; so it's common place for residents of one parish to work in the other and vice versa. Accordingly, the proffered legitimate nondiscriminatory reason is false and/or not supported by the record.

To further support pretext discrimination, the oral deposition testimony of Leodis Norman, a former teacher at Winnsboro Elementary School and a current elected official in Franklin Parish, is insightful and lists as follows:

Q.      …I forgot about this.  You prepared an affidavit following a May 5th meeting with Dr. Lanny Johnson.

        MS. LOSCH: Objection, I think the date is April but

Q.      April?

A.      April.

Q.      April 5th?

A.      Yes, sir.

Q.      Okay.  All right.  Tell me about the meeting.

A.      On—Mr. Grant, Roosevelt Grant, we are concerned as NAA-NAACP, we was concerned about why there's lack of blacks being overlooked for higher positions.

Q.      Okay.

A.      And we felt it was a need on our leader redress to go in and address Dr.

Johnson to get clarification and see could we find some type of resolution,

solution, to bring to the table in hiring more blacks under his leadership.

Q.      All right. And was this meeting held in this office?

A.      Yes. It was in his office.

Q.      Okay.  Who set the meeting?

A.      We called for—He did, Dr. Johnson.

Q.      So he wanted to meet with you?

A.      Yes.

Q.      All right.  And it was just the three of you guys?

A.      No.  I'm sorry.

Q.      Okay.

A.      Let me go back and rephrase that.  No. We came in and asked to speak with

him.

Q.      Okay.

A.      Yeah.  So he didn't set the meeting, as far as a date, but we came in and we

asked to speak with him, and he did meet with us.

Q.      All right.  The same day you came in or were you required to come back

another day?

A.      The same day.

Q.     Good.  Okay.  All right.  And the three of you had this meeting or were there
other people present?

A.     Just the three.

Q.     Okay.  And what was discussed?

A.     We discussed—the topic was why is it that blacks was not being recognized
in Franklin Parish as—in high position.

Q.     Okay. What did he say?

A.     He gave us a lot of political talk, you know, trying to get around it, but one
of the things that stood out is that he said there was no certified blacks available for
principalship.  Now, I'm just speaking in my own words but that's what something
that stood out with us and got—made Dr. Roosevelt and I kind of start questioning
him more and more, and we was questioning him that, you know, we have plenty
of blacks who are highly certified but was overlooked and being overlooked.

Q.     All right.  So are you stating, or telling me, Dr. Johnson said there were no
certified blacks to hire—

A.     Yeah.

Q.     --as principal—

A.     In Franklin Parish.

       --in Franklin Parish?

A.     Yes sir.  That's what he said.

Q.    And Im quite sure you were taken aback by that statement. Right?

A.    Yes, sir.

Q.    Did you attempt to tell him that he was incorrect in his position?

A.    Yes.  I did.  I let the president, Mr. Roosevelt, he did so.

Q.    Okay.

A.    He challenged Dr. Johnson on that level and—

Q.    How did that go?

A.    Well, you know, it didn't go well, but, you know—

Q.    What do you mean it didn't go well?

A.    Well, both men was making their argument and, you know, their point of view about the situation.

Q.    Was it a heated discussion?

A.    It wasn't a heated discussion but, you know, it was a very informative discussion.

Q.    Right.  Was the conversation primarily between Reverend Grant and Dr. Johnson and you spectated—

A.    Yeah.

Q.    --or did you also participate?

A.    No.  I just—It was between them two, Dr. Johnson and Roosevelt.

Q.    Okay. All right.  And how long was this discussion?

A.    That discussion lasted about twenty, twenty-five minutes, you know, on and on.

Q.    Okay.

A.    That's from—as I remember—recall.

Q.    And you're certain he said there are no certified blacks to hire?

A.    Yes.

Q.    Okay.  Now, were you speaking of in principalships or what positions in particular were you speaking of?

A.    Principalship.

Q.    Principalships?

A.    Yes, sir.

Q.    Okay.  Was Winnsboro Elementary discussed?

A.    Yes.

Q.    What did he say in regards to Winnsboro Elementary?

A.    As—well, we were just speaking in general about blacks being hired, so in my understanding, it's not particular about having a black at Winnsboro.   We were saying in the schools that we have in Franklin Parish, there was no black ever considered in his membership to hire in those positions, and especially Mr. Roosevelt questioned about Winnsboro, how come Winnsboro and Fort Necessity never had a black principal?

Q.    Okay.   All right.  Did any say, "Hey, you could've hired Ms. Watson at

Winnsboro Elementary, but you chose not to.  She was qualified."

A.    Right. Yes, sir.

Q.    That was discussed?

A.    That was discussed.  Mr. Roosevelt.  Yeah.

Q.    You see this pretty young lady right here?

A.    Yeah.  She's recording everything.

Q.    She's recording everything.

A.    Yeah.

Q.    And I want to make sure we get the record clear.

A.    Okay.

Q.    All right.

MR. LARVADAIN: What was my last question, ma'am?

COURT REPORTER: Did anyone say Ms. Watson was qualified?  And he

said, "Yes."

MR. LARVADAIN: Yes.

COURT REPORTER: And you said, "That was discussed?"  and he said,

"Yes."

MR. LARVADAIN: All right.

Q.     I just wanted to make sure that there discussions made in connection with her being a principal.

A.     Yes.

Q.     --of the Winnsboro Elementary School.

A.     Yes, sir.

Q.     And what did Dr. Johnson say in regard to that?

A.     When he made mention of Ms. Watson, again, his statement was he did not even recall her name outward, but he just made it there were no certified principal.

Q.     Okay.  So I just want to make sure that we're getting the record straight here. There was some discussion that there were no qualified blacks to be principals. Reverend Grant stated that Ms. Watson was qualified and she could've been a principal at Winnsboro Elementary.

A.     Yes, sir.

Q.     And in reply to that, Dr. Johnson said there were no qualified blacks?

A.     Right.

Q.     Am I putting words in your mouth?

A.     He did not.  No, sir.

Q.     I want to make sure that I'm not incorrectly paraphrasing it.  I want to make sure that I'm getting what was stated.

A.      Yes, sir.  He did not even mention Ms. Esther Watson being principal.  After

he made that—after Mr. Grant As saying that, "What about Ms. Watson?" he

really didn't even call her name out to consider her.

Q.      He just said there are no qualified?

A.      Right.

Q.      No qualified blacks?

A.      Right.

Q.      Do you recall how many times Dr. Johnson said that there were no qualified

blacks?

A.      Twice, as I recall.  About twice.

(ROA.763-765)


The above testimony offers some insight into the mindset of Dr. Neal Lane

Johnson.  Dr. Johnson had a prime opportunity to explain how appellant's age

and/or residency in Catahoula Parish affected his decision and/or defend his record

on hiring African-Americans in positions of authority.  Instead, Dr. Johnson

asserted appellant, and presumably others like appellant, were not qualified to be

principals in Franklin Parish schools.  In conclusion, the similarities between the

instant matter and ***Patrick v. Ridge***, 394 F.3d 311 (5th Cir. 2004) cannot be ignored.

**Appellant More Qualified for the Position**

Aside from proving pretext by showing the proffered legitimate nondiscriminatory reasons are false not supported by the evidence, appellant can also show pretext by establishing that she is "clearly better qualified". (See generally ***Burrell v. Dr. Pepper/Seven up Bottling Group***, 482 F.3d 408 (5th Cir. 2007). The following charts show a side by side comparison of appellant and Scott McHand.

### COMPARISON OF QUALIFICATIONS[1]

| QUALIFICATIONS | ESTHER WATSON | SCOTT MCHAND |
|---|---|---|
| Bachelor of Science Degree | Grambling State University (1973) | University of Louisiana at Monroe (2011) |
| Master's Degree | Grambling State University (1976) | University of Louisiana at Monroe (2012)/Completed Alternative Teacher Education Program, University of Louisiana at Monroe (2012) |
| Plus 30 | Master's Degree Plus 30 graduate hours | Master's Degree Plus 30 graduate hours (2018) |
| Eligibility for Supervisor of Child Welfare & Attendance &/or Visiting Teacher | Yes, 6/8/2001 | No |
| Eligibility for School Superintendent | Yes, 6/8/2001 | No |
| Eligibility for Adult Education Instructor | Yes, 6/14/1995 | No |

---

[1] ROA.321-323

26

| Eligibility for Adult Education Administrator and/or Supervisor | Yes, 6/14/1995 | No |
|---|---|---|
| Eligibility for Supervisor of student teaching | Yes, 10/8/1984 | No |
| Eligibility for Adapted Physical Education | Yes, 4/7/1983 | No |
| Eligibility for Driver and Traffic Safety Education | Yes, 8/26/1982 | No |
| Eligibility for Principal | Yes, 3/12/1979 | Yes, 2018 |
| Eligibility for Parish/City School Supervisor of Instruction | Yes, 3/12/1979 | No |
| Eligibility for Health, Physical and Safety Education | Yes | No |
| Eligibility for PIP 6 | Yes | No |

## TEACHING EXPERIENCE

| ESTHER WATSON[2] | SCOTT MCHAND[3] |
|---|---|
| Teacher in Catahoula Parish (1973-1994) | Teacher in Franklin Parish (2011-2018) |
| Principal in Catahoula Parish (1994-2001) | |
| Child Welfare & Attendance Specialist in Catahoula Parish (2001-2008) | |
| Assistant principal in Franklin Parish (2008-2018) | |

Aside from both individuals having the basic qualifications to be a principal, appellant has ten (10) additional certifications while Scott McHand has none.

---
[2] ROA.374-378
[3] ROA.353-356

Appellant also taught for nineteen (19) years; was a principal in the Catahoula Parish School system for eight (8) years; and was an assistant principal in the Franklin Parish School system for ten (10) years and was the acting principal of Winnsboro Elementary for one (1) month prior to applying to be principal of Winnsboro Elementary. On the other hand, Scott McHand only taught for eight (8) years in the Franklin Parish School system before becoming principal of Winnsboro Elementary. Accordingly, appellant is "clearly better qualified".

In most instances when the "clearly better qualified" candidate is not chosen, there seldom is any follow-up as to how the involved parties faired. In this situation, there is follow-up. Appellant is still working in the Catahoula Parish School system with no retirement plans, while under the tutelage of Scott McHand, Winnsboro Elementary suffered. (ROA.188, 357) Scott McHand's leadership style clashed with several teachers. As a result, some skilled teachers left the school and the testing scores went down and issues with student discipline went up. (ROA.357-359) Scott McHand lasted three (3) years at Winnsboro Elementary and has been given another principal position at another Franklin Parish school. (ROA. 362) The irony is undeniable.

## CONCLUSION

In this situation, appellant has shown that the two (2) alleged legitimate nondiscriminatory reasons are false and discriminatory, and she was "clearly better

28

qualified".   Appellant has established that there is a genuine issue of material fact that warrants the reversal of the granting of summary judgment.  Additionally, it is also worth mentioning that in evaluating the evidence tendered by the appellant, this Honorable Court must accept the evidence as credible and draw all justifiable inferences in its favor. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 255.

**REQUESTED RELIEF**

The ruling granting appellee's Motion for Summary Judgment should be reversed.

Respectfully submitted,

**LAW OFFICES OF MALCOLM X. LARVADAIN**

By:     s/Malcolm X. Larvadain
        Malcolm X. Larvadain, La. Bar #26,066
        **ATTORNEY FOR APPELLANT**
        626 Eighth Street
        Alexandria, Louisiana 71301
        TEL. (318) 445-3533
        FAX. (318) 445-403

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2022, I electronically filed Appellant's

Brief with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit by

using the appellate CM/ECF system.  All counsels of record are registered

CM/ECF users, and will be served by the appellate CM/ECF system.

s/Malcolm X. Larvadain

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. The brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

   a.  This brief contains 5,075 words.

2. The brief complies with the typeface requirements of Fed.  R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because:

   a.  The brief has been prepared in a proportionally spaced typeface using WordPerfect X4 in 14 point font of Times w Roman.

**LAW OFFICES OF MALCOLM X. LARVADAIN, INC.**

By:   s/Malcolm X. Larvadain
      Malcolm X. Larvadain, La. Bar #26,066
      **ATTORNEY FOR APPELLANT**
      626 Eighth Street
      Alexandria, Louisiana 71301
      TEL. (318) 445-3533
      FAX. (318) 445-4030