## CASE NO. 22-30038

_____

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

**ESTHER WATSON,**
**Plaintiff-Appellant**

**VERSUS**

**SCHOOL BOARD OF FRANKLIN PARISH; EDDIE RAY BRYAN;**
**RONNIE HATTON DANNY DAVIS; RICHARD KELLY; LOUISE**
**JOHNSON; TIM EUBANKS; DOROTHY BROWN; LANNY JOHNSON**
**Defendants-Appellees**

_____

Appeal from the United States District Court
Western District of Louisiana, Monroe Division

**ORIGINAL BRIEF ON BEHALF OF DEFENDANTS-APPELLEES**

_____

**MELISSA S. LOSCH**
2431 S. Acadian Thruway, Suite 600
Baton Rouge, Louisiana   70808
(225) 923-3462
**ATTORNEY FOR DEFENDANTS-APPELLEES**

1

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. The representations are made in order that the judge of this Court may evaluate possible disqualification or recusal.

1.   **Franklin Parish School Board; Eddie Ray Bryan; Ronnie Hatton Danny Davis; Richard Kelly; Louise Johnson; Tim Eubanks; Dorothy Brown; Lanny Johnson**
     *Defendants-Appellees*

2.   **Melissa S. Losch**
     2431 S. Acadian Thruway, Suite 600
     Baton Rouge, Louisiana 70808
     (225) 923-3462
     *Attorney for Appellee School Board*

3.   **Esther Watson**
     *Plaintiff-Appellant*

4.   **Malcolm X Larvadain**
     626 Eighth Street
     Alexandria, Louisiana 71301
     (318) 445-3533
     *Attorney for Appellant Esther Watson*

s/Melissa S. Losch
Melissa S. Losch

## **STATEMENT REGARDING ORAL ARGUMENT**

The record is clear that the Appellee did not discriminate against Appellant based on race or on any other basis whatsoever.  Appellee replied upon a variety of factors in the selection process, including educational credentials, certification, experience, interview scores, each employee's work history, and the likelihood of each candidate to remain in the position for the long-term.  Looking at the candidates as a whole and in consideration of those factors, Appellant determined for valid and legitimate reasons that the individual selected was the most qualified for the position.  The record is clear and unambiguous as to the events that transpired and the burden-shifting framework in employment discrimination cases is well-settled.   Therefore, oral argument is unnecessary to aid the Court in rendering a decision in this matter.

## TABLE OF CONTENTS

Certificate of Interested Persons……………………………………………….2

Statement Regarding Oral Argument……………………………………….........3

Table of Contents…………………………………………………………………...4

Table of Authorities…………………………………………………………...5

Statement of the Case…………………………………………………………7

Summary of Argument…………………………………………………………..8

Standard of Review…..……………………………………………………….9

Argument…………………………………………………………………...10

    1.  The district court correctly concluded that Appellee, Franklin Parish School Board ("School Board"), articulated legitimate, nondiscriminatory reasons for its promotional decision…………..…………………………10

    2.  The district court correctly concluded that the articulated reasons were not pretext for discrimination, nor that Appellant's race was a motivating factor in the decision............................................................................16

        a. Testimony of Leodis Norman is not evidence of pretext...................16

        b. Appellant *was not* "clearly more qualified" than Mr. McHand..........1

         i.     The individual selected was qualified for the position. ............19

         ii.    Appellant's education not superior to that of individual selected. ....................................................................................19

         iii.   Interview scores did not render Appellant "clearly more qualified." ……..………………………………………………...21

         iv.   Years of experience did not render Appellant "clearly more qualified." ……..…………………………………………………...22

        c. Mr. McHand's level of success as principal of WES is irrelevant….23

Conclusion…………………………………………………………………...24

Certificate of Service ……………………………………………………..26

Certificate of Compliance with Rule 32(a)……………………………………..27

## TABLE OF AUTHORITIES

### CASES

*Adams v. Franklin Parish School Board,*
  2021 WL 1269124 at 6, ((W.D. La. 2021) ………………………………11

*Alvarado v. Tex. Rangers,*492 F.3d 605, 611 (5th Cir. 2007) ………………………11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ………………9

*Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993) ………………11

*Celotex Corporation v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ………………………9

*Hagen v. Aetna Ins. Co*., 808 F.3d 1022, 1026 (5th Cir. 2015) …………………9

*McDonnel Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973) ……………10,11

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.,*
  934 F.3d 447, 459 (5th Cir. 2019). …………………………………………23

*Megill v. Bd. of Regents,* 541 F.2d 1073, 1077 (5th Cir.1976) ……………………24

*Morris v. Town of Independence,* 2015 WL 6134108, *4 (E.D. La. 2015) ………10

*Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 (5th Cir.1997) …………………24

*Oliver v. U.S. Dept. of Defense,* 44 F. Supp.2d 821, 825 (W.D. Tx.1991) ……22,23

*Patrick v. Ridge,* 394 R.3d 311 (5th Cir. 2004) …………………………...14,15,16

*Robinson v. Orient Marine Co.*, 505 F.3d364, 366 (5th Cir. 2007) …………………9

*St. Mary's Honor Ctr. V. Hicks,* 509 U.S. 502, 113 S.Ct. 2742 (1993) ……………11

*U.S. v. Franklin Parish School Board,*
    2013 WL 401890 (W.D. La. 2013). ………………………………….……21

*Willis v. Cleco Corp.,* 749 F.3d 314, 320 (5th Cir. 2014) …………………………10

## **STATUTES**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ……………7,10

## **FEDERAL RULES**

Federal Rule of Procedure 56……………………………………………….…9

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

1. Did the district court correctly conclude that Appellee, Franklin Parish School Board ("School Board"), articulated legitimate, nondiscriminatory reasons for its promotional decision?

2. Did the district court correctly conclude that the articulated reasons were not pretext for discrimination?

## STATEMENT OF THE CASE

Plaintiff-Appellant, Esther Watson ("Ms. Watson), initiated a lawsuit against the Defendant-Appellee, Franklin Parish School Board ("School Board"), as well as all members of the School Board, former Superintendent Dr. Lanny Johnson ("Dr. Johnson"), and his successor in their individual capacities on April 28, 2020 alleging that she was subjected to racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended ("Title VII"), when she was not selected for a principalship position for which she applied at Winnsboro Elementary School ("WES"). ROA.12-17. Upon Motion, the district court dismissed all School Board members, Dr. Johnson, and his successor in their individual capacities. ROA.170-187. After extensive discovery, Appellee filed a Motion for Summary Judgment to dismiss the Title VII racial discrimination claim, which was properly granted by the district court. ROA.779-809.

## SUMMARY OF THE ARGUMENT

Appellant complains that she was not selected for a principalship position at Winnsboro Elementary School (WES) based on race; however, Appellee relied upon a variety of factors in making the final selection for the principalship position, including educational credentials, certification, experience, interview scores, each employee's work history, and likelihood of each candidate to remain in the position for the long-term. ROA.207-210, 212-213. Considering the factors as a whole, Dr. Johnson determined that the individual selected was likely to remain in the position, and in the school district, for the long-term, whereas it was unlikely that Appellant would do so. ROA.207-210, 212-213. The district court correctly determined that anticipated length of service is a valid and legitimate consideration when filling a principalship position in a school district and based on that factor and a review of the candidates' qualifications *in toto*, that the School Board presented valid and legitimate reasons for its selection. ROA.216. Therefore, the question turned on whether Appellant could present competent evidence that the proffered reasons were pretext for discrimination. Appellant was unable to do so, and thus the district court found in favor of the Appellee and granted its Motion for Summary Judgement. ROA.804-818. For the reasons set forth herein, the district court's ruling was proper and should be affirmed by this Court.

## STANDARD OF REVIEW

The Court reviews the district court's grant of summary judgment de novo, applying the same standards as the district court. *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015). Summary judgment is appropriate if the record evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Robinson v. Orient Marine Co.*, 505 F.3d364, 366 (5th Cir. 2007); FED. R. CIV. P. 56(a). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment. See *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). The United States Supreme Court stated that "[t]he plain language of Rule 56(C) mandates the entry of summary judgment, after adequate time for discovery upon motion, against a party who fails to make a showing sufficient to establish the existence of elements essential to the party's case in which the party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here, Plaintiff cannot establish the facts necessary to prove her claim that she was subjected to discrimination and there are no genuine issues of material fact that

would, if determined to be true, entitle Plaintiff to relief.  Thus, dismissal of this matter by the district court was proper and should be affirmed.

## **ARGUMENT**

1.  **The district court correctly concluded that Appellee, Franklin Parish School Board ("School Board"), articulated legitimate, nondiscriminatory reasons for its promotional decision.**

Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment. 42 U.S.C.§ 2000e *et seq.* Discrimination claims based on circumstantial evidence are evaluated according to the framework set forth in *McDonnel Douglas Corp. v. Green* whereby a Plaintiff must first establish a prima facie case of discrimination. *McDonnel Douglas,* 411 U.S. 792, 802-05 (1973); *Morris v. Town of Independence,* 2015 WL 6134108, *4 (E.D. La. 2015).  To establish a prima facie case of discrimination Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered some adverse employment action by the employer; and (4) she was treated less favorably than other similarly situated employees outside of the protected group." *Id.*[1]   For purposes of the Motion for Summary Judgement only

---

[1] Citing *Willis v. Cleco Corp.,*749 F.3d 314, 320 (5th Cir. 2014) (Quoting *McCoy v. City of Shreveport.,* 492 F.3d 551, 556 (5th Cir. 2007)).

and without admission, Appellee did not dispute that Plaintiff has established her prima facie case.

Once a plaintiff establishes a prima facie case of discrimination the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the action.  If the defendant meets that burden of production, the plaintiff must then offer evidence sufficient to show the reason was pretext for discrimination or that plaintiff's protected status was a motivating factor for the action.  *Adams v. Franklin Parish School Board,* 2021 WL 1269124 at 6, ((W.D. La. 2021).[2] Here, the district court correctly found that the School Board's articulated reasons were valid, legitimate, and non-discriminatory.  Dr. Johnson relied upon a variety of factors in making the selection, including the educational credentials of the candidates, certification, experience, interview scores, each employee's work history, and anticipated length of service.  ROA.207-210, 212-213.

When selecting an individual for a principalship position consideration as to which candidate is most likely to remain in the position for the long term and anticipated length of service are valid and legitimate considerations.  In fact, Plaintiff's own witness, Mr. Ronald Lofton (former principal of WES and then

---

[2] Citing *Alvarado v. Tex. Rangers,* 492 F.3d 605, 611 (5ᵗʰ Cir. 2007); See also: *McDonnell Douglas Corp. V. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), re-affirmed in *St. Mary's Honor Ctr. V. Hicks,* 509 U.S. 502, 113 S.Ct. 2742 (1993); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993).

superintendent of the Catahoula Parish school district), testified that while a candidate may have more experience there are other factors to consider, one of which would be to seek out a candidate that would likely remain in the position for multiple years.  Specifically, Mr. Lofton stated "I look for somebody that I feel like will be there for – for multiple years, not do 1 year and go on." ROA.255.

Appellant specifically argues in her brief that consideration of anticipated length of service was not a legitimate, nondiscriminatory reason for selecting a new principal, drawing the inaccurate and unsubstantiated conclusion that age was the reason for her non-selection.  Dr. Johnson was clear that the consideration was not based on age.  ROA.213-214.  Rather, there were many factors that reasonably caused Dr. Johnson to believe that Ms. Watson was unlikely remain in the principalship position, or even with the Franklin Parish School Board, for the long term, none of which were based on age. ROA.207-211, 212-215.

Ms. Watson is a resident of Catahoula Parish and has been employed by the Catahoula Parish School Board for most of her career.  She began working as a teacher with the Catahoula Parish School Board in 1973, was promoted to a principalship position in 1994, and promoted again to the position of child welfare and attendance supervisor in 2002.  ROA.185-186. Ms. Watson remained in that position until her retirement in 2008.  ROA.185-187, 252-253. After serving her entire 35-year career from 1973-2008 with the Catahoula Parish School Board,

approximately thirty (30) days after her retirement Ms. Watson decided to return to work and applied for an assistant principalship position with the Franklin Parish School Board. ROA.178, 213. Dr. Johnson recommended her for the position and Ms. Watson was hired as an assistant principal at Fort Necessity School. ROA.200. In 2009, Mr. Ronald Lofton was selected for a principalship position at WES. Ms. Watson and Mr. Lofton had a long work history together outside of Franklin Parish, and upon Mr. Lofton's specific request, Ms. Watson transferred from Fort Necessity to the assistant principalship position at WES. ROA.178. Subsequent to his resignation from the Franklin Parish School Board, Mr. Lofton was selected to serve as superintendent of the Catahoula Parish School Board. ROA.220.

In considering anticipated length of service, Dr. Johnson considered several factors, including the fact that Ms. Watson had *already* retired and thus could opt to reenter retirement at any time, calculations on the average length of an educator's service, the fact that she devoted her entire 35-year career to the Catahoula Parish School District ("Catahoula") and continued to reside in that district, and that Mr. Lofton had accepted a position as superintendent of Catahoula who had a long work history with Ms. Watson. ROA.220. Taking all of these factors into consideration, Dr. Johnson determined that it was unlikely she would remain in the principalship position for the long-term, and that it was highly likely that she would either reenter retirement or, if she opted to continue working, that she would return to Catahoula.

ROA.216-217.  As it turned out, Dr. Johnson was correct and Ms. Watson did return to Catahoula, serving in her former position as Child Welfare and Attendance Supervisor.  ROA.211-213, 216-217.  In comparison, Mr. McHand resides in Franklin Parish, his children go to school in the Franklin Parish school system, and he had recently obtained his educational leadership degree with the goal of becoming an administrator.  ROA.211.  Therefore, it was perfectly reasonable for Dr. Johnson to conclude that Mr. McHand would be more likely to remain in the position for the long term.

Other factors also weighed into Dr. Johnson's determination.  In looking at employment history, Dr. Johnson recalled being contacted by the Louisiana Department of Education who raised concerns regarding testing protocols being implemented by Ms. Watson.  He also recalled concerns raised by the School Board's Child Welfare and Attendance division with respect student discipline at WES during Ms. Watson's tenure as assistant principal.  ROA.218-219.  While these concerns were not the focus of Dr. Johnson's decision, he testified that such matters remained in his mind and were a consideration, albeit to a lesser degree.  ROA.216-220.

Dr. Johnson looked at multiple factors and reasonably reached the conclusion that Mr. McHand was the most qualified candidate for the position.   Appellant's reliance on *Patrick v. Ridge,* 394 R.3d 311 (5th Cir. 2004) is misguided.  There, the

employer simply stated, without reason, the subjective belief that the applicant would not "fit in" with the group and thus was not "sufficiently suited" for the position. *Id.* at 316. This Court explained that to rebut the presumption of discrimination created by a prima facie case, an employer must articulate its reason with "sufficient clarity" to afford the employee a realistic opportunity to show that the reason is pretextual. *Patrick* at 317. Here, the nondiscriminatory reason for the selection turned on Dr. Johnson's belief that Ms. Watson would not remain in the position or the district long-term. Had Dr. Johnson stopped there, the analysis in *Patrick* might apply; however, Dr. Johnson went further, and specified the *reasons* why he did not believe the Appellee would remain in the position long-term. First, she had *already retired* and was working as a retiree, making perfect sense that there would be a high likelihood she would reenter retirement at some point in the near future and not remain in service for the long term.

Furthermore, Ms. Watson's residency was significant to Dr. Lanny's decision for multiple reasons,  including (1) ties to the community; (2)  Ms. Watson had devoted her career to the school district where she resides, and (3) once Mr. Lofton, the prior principal of WES, accepted a position as superintendent of Catahoula Parish School Board, it was reasonably likely that Ms. Watson would follow Mr. Lofton back to the Catahoula school district where she had devoted her 35-year career and where she continued to reside. Which, ultimately, is what happened.

ROA.216-217. Thus, unlike *Patrick,* the School Board articulated a valid and legitimate reason for the selection of Mr. McHand, and the burden correctly shifted back to the Appellant to offer evidence sufficient to show that the stated reason was pretext for discrimination, or that Appellant's protected status was a motivating factor for the action.

2. **The district court correctly concluded that the articulated reasons were not pretext for discrimination, nor that Appellant's race was a motivating factor in the decision.**

a. **Testimony of Leodis Norman is not evidence of pretext.**

There is no evidence in the record whatsoever that would support that Dr. Johnson's proffered reasons were pretext for discrimination or that race was a motivating factor in the decision.  Plaintiff relies heavily on testimony from a disgruntled former employee regarding his recollection of statements allegedly made during a meeting between himself, Dr. Johnson, and the president of the NAACP, Rev. Roosevelt Grant, to show "evidence" of pretext; however, such reliance is misplaced.  ROA.258-259. It is curious why Ms. Watson would rely so heavily on Mr. Norman's recollection of the meeting when, during Mr. Norman's deposition, he could not even recall the purpose of the meeting, which had nothing to do with Ms. Watson or her non-selection to the position of principal. ROA.739-740.  Rather, the purpose of the meeting was to discuss Mr. Norman's complaints with respect to

Scott McHand, the new principal selected instead of Ms. Watson, who was Mr. Norman's supervisor at the time of the meeting.  ROA.789-790.

Rev. Grant attended the meeting on behalf of Mr. Norman with respect to his complaints against Mr. McHand, which occurred on April 5, 2019, long after Mr. McHand was selected to the position prior to the start of the 2018-2019 school year. ROA.789-790.

During the meeting, Rev. Grant took the opportunity to discuss his concerns about hiring practices in the district; however, Rev. Grant's affidavit does not indicate that he asked about the reasons Ms. Watson was not selected for the position, nor does he indicate that Dr. Johnson made any statement to the effect of there being no certified African American candidates for principalship positions, generally or with respect to Ms. Watson.  ROA.789-790.  Rather, according to Rev. Grant, he was discussing generally the NAACP's position with respect to the hiring of African American individuals to leadership positions, not with respect to Ms. Watson specifically, wherein Ms. Watson was used as an example along with several others. ROA.789-790.  When questioned about the meeting, Dr. Johnson could not specifically recall the discussion, but did explain that he may have commented about a lack of certified candidates in a general way because, during his tenure as superintendent of Franklin Parish School Board, there were leadership positions available for which no certified African American candidates had applied.

17

ROA.216.  Dr. Johnson's explanation comports with Rev. Grant's rendition of the conversation, and Mr. Norman's admittedly faulty recollection of a conversation between Rev. Grant and Dr. Johnson he heard as a third party to the conversation cannot be considered competent evidence of pretext.  Notably, the one person who could have supported Mr. Norman's rendition of the conversation, Rev. Grant, was not listed as a witness in this matter, despite Ms. Watson's production of Rev. Grant's affidavit which *does not* include information supportive of Mr. Norman's testimony.  ROA.791-793. The implication that Dr. Johnson stated to the NAACP that Ms. Watson was *not* certified is nonsensical as Dr. Johnson has always maintained that while Ms. Watson was certified and qualified, it was his opinion that, on the whole, and for the reasons set forth herein, Mr. McHand was more qualified for the position.

**b.**  **Appellant *was not* "clearly more qualified" than Mr. McHand.**

Contrary to Appellant's assertions, there is no evidence that she was "clearly more qualified" than Mr. McHand.  Mr. McHand was fully qualified for the position, Appellant's education was not superior to that of Mr. McHand, the interview scores were not such that Appellant was high above Mr. McHand, and her experience did not equate to her being more qualified by virtue of her years of service.

### i.     The individual selected was qualified for the position.

In her initial Complaint, Plaintiff relied on her incorrect assumption that the individual selected, Mr. Scott McHand, was not certified to be an educational leader and thus not qualified for the position. ROA.4. Ms. Watson made this assumption based solely on information gleaned from the Louisiana Department of Education website; however, the evidence is clear that while the information had not yet been input into the Louisiana Department of Education system, Mr. McHand had in fact completed all necessary requirements and held the proper certification and qualifications. One of the pathways for a teacher to become certified as an educational leader is through the Master's Degree pathway, whereby the teacher must complete a graduate degree in the area of educational leadership and to have a passing score on the school leaders licensure assessment (SLLA). Notably, while continuing in his role as a teacher Mr. McHand enrolled in a program to earn a Master of Educational Leadership degree, took and passed the SLLA in November of 2017, and earned his Master of Educational Leadership in May of 2018. ROA.179, 212, 221-226, 228, 230, 232. Thus, Mr. McHand was qualified for the position and Ms. Watson's initial contention is wholly without merit.

### ii.     Appellant's education not superior to that of individual selected.

Ms. Watson's claim that she was more qualified than Mr. McHand based on her educational background is equally false. Both Mr. McHand and Ms. Watson

hold master's degrees in education, with Ms. Watson earning a master plus 30 by taking an additional 30 hours of graduate course work (date unknown), and Mr. McHand earning a second degree - Master of Educational Leadership - in 2018. At best, the Ms. Watson and Mr. McHand were equally qualified from an educational standpoint; however, arguably, Mr. McHand's educational qualifications are superior than Ms. Watson's as he has a master's degree with a focus on educational leadership whereas Ms. Watson holds no such specialized degree. ROA.232-239, 240-244.

Appellant submits a side-by-side comparison of her certifications compared to Mr. McHand's certifications in an effort to persuade the Court there is a genuine issue of fact as to whether she was "clearly better qualified" than Mr. McHand based on the sheer number of certifications; however, the content of the certifications clearly show that such are not related to the qualifications necessary to be a school principal, the position at issue in this case. From the period of 1979 through 2001 Ms. Watson obtained a number of certifications from the Louisiana Department of Education in areas such as child welfare and attendance, adult education, supervisor of student teaching, adaptive PE, and driver/traffic safety education. ROA.289-290. While a few of these certifications may have had some relationship to supervision of employees (such as supervision of student teaching or school superintendent), such certifications do not necessarily make an individual more or less qualified to

serve as a school principal.  Both individuals maintained the necessary and relevant qualifications and certifications, and Mr. McHand not only had all required credentials and qualifications, but he arguably demonstrated a *superior* educational background with respect to the specific position at issue (i.e., master's degree in educational leadership). ROA.212, 221-227, 228, 230, 232, 233-239.

### iii.    Interview scores did not render Appellant "clearly more qualified."

Ms. Watson also relies on having a higher interview score than Mr. McHand. When administrative positions (i.e., principals, assistant principals, directors/supervisors) are not otherwise filled through an internal transfer, the candidates are interviewed by a diverse five-person interview committee.  This system was developed as part of a desegregation plan that is no longer required as a result of the School Board having reached unitary status.[3]  Nevertheless, in an effort to maintain integrity of the process, Dr. Johnson opted to leave the process in place even though he was under no obligation to do so, which lends credence to the fact that race was not a motivating factor in the selection decision.  Each interviewer rates each interviewee using an identical rating scale across a number of criteria. The interview committee provides the top scores to the superintendent who in turn is responsible for selecting the candidate.  After going through the interview process

---

[3] *U.S. v. Franklin Parish School Board,* 2013 WL 401890 (W.D. La. 2013).

as described above, without deviation from the ordinary process, the committee provided the top scores to Dr. Johnson for him to make the final decision. ROA.209. It is undisputed that Ms. Watson scored *slightly* higher than Mr. McHand in the interview; however, Mr. McHand was also one of the top candidates presented by the interview committee for Dr. Johnson's consideration and thus was deemed an appropriate and worthy candidate by this racially diverse team of individuals. ROA.211, 216.

### iv. Years of experience did not render Appellant "clearly more qualified."

Finally, Ms. Watson argues that she had more experience and thus was the better candidate, but her argument under this set of facts is unpersuasive. The School Board does not dispute that Ms. Watson had more career experience. ROA.216-217, 158-159, 177. However, although Ms. Watson may have had more experience in terms of years of service and as an administrator, experience alone does not render an individual more qualified. *Oliver v. U.S. Dept. of Defense,* 44 F. Supp.2d 821, 825 (W.D. Tx.1991)(citing *Nichols v. Lewis Grocer,* 138 F.3d 563, 568-69 (5th Cir. 1998)). Notably, Ms. Watson herself received her first promotion from the position of a classroom teacher to a principalship position without ever having served as an administrator. ROA.177. To now claim that such administrative experience makes a candidate "clearly" more qualified for purposes of proving

discrimination is disingenuous.[4] This Court has held that "an attempt to equate years of service served with qualifications is unpersuasive." *Oliver* at 825. Furthermore, a review of Mr. McHand's resume evidences that while he did not have specific experience as an assistant principal or principal, he did have leadership experience directly related to administrative duties. For example, Mr. McHand has been a professional development presenter and participated in a focus group for the 2018 Teacher Leader Summit for educator evaluations and feedback strategies. ROA.233-239. Here, in making the final hiring decision, Dr. Johnson relied upon a variety of factors including educational credentials, certification, experience, interview scores, personal knowledge of each employee's work history, and anticipated length of service. Looking at these factors, as a whole, Dr. Johnson deemed Mr. McHand to be better qualified for the position than Ms. Watson. ROA.211, 216-217.

### c. Mr. McHand's level of success as principal of WES is irrelevant.

Ms. Watson calls into question Mr. McHand's performance as principal of WES the fact that he currently serves at another school in the district in a misguided attempt to show evidence of pretext. As an initial matter, Appellee wholly disagrees with Ms. Watson's analysis of Mr. McHand's performance. Nevertheless, an

---

[4] See eg.: *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 459 (5th Cir. 2019).

analysis of his performance is of no relevance to the matter before the Court.  It is well-settled that anti-discrimination laws do not protect against business decisions that a plaintiff believes to be unfair unwise, only against decisions motivated by unlawful animus.  Even if an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination.  See eg.: *Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 (5th Cir.1997); *Megill v. Bd. of Regents,* 541 F.2d 1073, 1077 (5th Cir.1976). Here, the School Board had a reasonable belief that Mr. McHand was the most appropriate candidate.   Whether or not the School Board is correct, that reasonable belief is sufficient to withstand a finding of pretext.  Based on these facts the district court was correct in determining that the School Board articulated legitimate, nondiscriminatory reasons for its decision to select Mr. McHand, and equally correct that there was no evidence in the record that would support Appellant's claim that the stated reasons were pretext for discrimination.

## <u>CONCLUSION</u>

Appellee-School Board proffered legitimate, nondiscriminatory reasons for its decision not to promote Appellant to the principalship position at issue in the instant litigation.  Appellant, while she was a qualified applicant for the position, was not the only qualified applicant considered by the superintendent for the principalship at Winnsboro Elementary School.   Appellant's application had to be

considered against the experience, qualifications, and application of other candidates.  Superintendent Lanny Johnson selected Scott McHand to succeed Mr. Ronald Lofton as principal of Winnsboro Elementary because he believed that overall, Mr. McHand possessed both the necessary and superior qualifications to be a long-term and successful principal.  Appellant has failed to provide any evidence that would show or tend to show that the Appellee's proffered reasons for hiring Mr. McHand are untrue, illegitimate, or unworthy of credence.  Accordingly,  the district court's judgment should be affirmed.

**HAMMONDS, SILLS, ADKINS, GUICE, NOAH & PERKINS, LLP**

By:   <u>s/ Melissa S. Losch</u>
       MELISSA S. LOSCH
       La. Bar Roll No. 26811
       *ATTORNEY FOR DEFENDANTS-APPELLEES*

       Dated:  June 6, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2022, the foregoing document was served, via the Court's Document Filing System, CM/ECF, upon the following registered CM/ECF user:

**Malcolm X Larvadain**
626 Eighth Street
Alexandria, Louisiana 71301
(318) 445-3533

*COUNSEL FOR PLAINTIFF-APPELLANT*

Counsel also certifies that on June 6, 2022, the foregoing instrument was transmitted to Mr. Curtis P. Pursell, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document filing system.

**HAMMONDS, SILLS, ADKINS, GUICE, NOAH & PERKINS, LLP**

By:    <u>s/ Melissa S. Losch</u>
          MELISSA S. LOSCH
          La. Bar Roll No. 26811
          *ATTORNEY FOR DEFENDANTS-*
          *APPELLEES*

          Dated:  June 6, 2022

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

With Type-Volume Limitation, Typeface Requirements,
and Type Style Requirements

The brief complies with the type of volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 4275 words, excluding the parts of the brief exempted by <u>FED. R. APP. P. 32(a)(7)(B)(iii)</u>.

The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows in 14 point font of Times New Roman.

**HAMMONDS, SILLS, ADKINS, GUICE,
NOAH & PERKINS, LLP**

By:     <u>s/ Melissa S. Losch</u>
       MELISSA S. LOSCH
       La. Bar Roll No. 26811
       *ATTORNEY FOR DEFENDANTS-
       APPELLEES*

       Dated:  June 6, 2022